IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:22-cv-00265-MR-WCM

| | | |
|---|---|---|
| DEANA HOSIE, | ) | |
| | ) | |
| Plaintiff, | ) | ORDER |
| v. | ) | |
| | ) | |
| OMNI HOTELS MANAGEMENT | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Plaintiff's Motion for Protective Order (the "Motion for Protective Order," Doc. 28), Defendant's Motion to Compel Medical Examination of the Plaintiff (the "Motion for IME," Doc. 31), and Defendant's Motion to Strike Plaintiff's Untimely Reply in Support of Motion for Protective Order (the "Motion to Strike," Doc. 34).

I. Background

On November 16, 2020, Deana Hosie ("Plaintiff") filed suit seeking damages for injuries she sustained on November 17, 2017 after falling at the Grove Park Inn in Asheville, North Carolina (the "First Case," 1:20-cv-374-MR-DSC).

On December 8, 2021, the Court dismissed the First Case "without prejudice such that the Plaintiff may finish collecting her medical records before refiling this action." First Case, Doc. 46.

1

On November 30, 2022, Plaintiff refiled the case in state court, naming Omni Hotels Management Corporation ("Defendant") as the defendant (the "Second Case," Doc. 1-1).

Defendant removed the Second Case on December 21, 2022. Doc. 1.

A Pretrial Order and Case Management Plan (the "Pretrial Order," Doc. 21) was entered on August 9, 2023 and set the following deadlines:

| | |
|---|---|
| Expert Designations-Plaintiff(s) | December 4, 2023 |
| Expert Designations-Defendant(s) | January 8, 2024 |
| Discovery | May 13, 2024 |
| Mediation | May 29, 2024 |
| Motions Deadline | June 12, 2024 |
| Trial | November 12, 2024 term |

On January 25, 2024, Defendant issued a Notice setting Plaintiff's deposition for February 13, 2024 at the office of defense counsel in Glen Allen, Virginia (the "Notice," Doc. 29-1).

On February 5, 2024, Plaintiff filed the Motion for Protective Order. Doc. 28. Defendant has responded, and Plaintiff has replied. Docs. 30, 33.

On March 1, 2024, Defendant filed the Motion for IME. Doc. 31. Plaintiff has responded, and Defendant has replied. Docs. 36, 37.

On March 11, 2024, Defendant filed the Motion to Strike. Doc. 34. Plaintiff has not filed a response and the time for doing so has expired.

## II. The Motion to Strike

Defendant argues that Plaintiff's reply in support of her Motion for Protective Order (Doc. 33) was filed out of time and should be stricken.

Local Civil Rule 7.1(e) provides that a reply to a response to a motion must be filed within 7 days of the date the response is served. The Pretrial Order also reflects this deadline. Doc. 21 at 7.

Here, the Motion for Protective Order was filed on February 5, 2024, and Defendant's response was timely filed on February 20, 2024, which made any reply by Plaintiff due by February 27, 2024. However, Plaintiff did not file her reply until March 2, 2024 and did not seek an extension of her filing deadline or provide a reason for the late filing.

Consequently, Plaintiff's reply will be stricken.[1]

## III. The Motion for Protective Order

Federal Rule of Civil Procedure 26(c)(1) provides, in relevant part that:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. … The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense …

---

[1] However, even if Plaintiff's reply were considered, it would not change the outcome of the Court's ruling regarding the Motion for Protective Order.

3

The party seeking a protective order bears the burden of establishing good cause for the entry of such an order. See Ben-Levi v. Harris, No. 5:15-3125, 2016 WL 8997396 at *3 (E.D.N.C. Aug. 16, 2016) ("The party moving for the protective order bears the burden of showing good cause and 'must present a particular and specific demonstration of fact' as to why the protective order should be granted.") (citations omitted).

Generally, courts have found that a defendant is entitled to take the deposition of a plaintiff in the forum in which the plaintiff has brought suit. See Trivino v. Mountain Dream, LLC, No. 2:10 cv 005-DLH, 2010 WL 11688558, at *2-3 (W.D.N.C. June 11, 2010) (collecting cases); Plant v. Merrifield Town Center Ltd. P'ship, 711 F. Supp. 2d 576, 589 n.9 (E.D. Va. 2010) ("barring exceptional circumstances, plaintiffs must be available for a deposition in the district in which the action was brought"); Otto Candies, LLC v. Citigroup, Inc., 963 F.3d 1331, 1334 (11th Cir. 2020) ("The district court has broad discretion over the location of depositions, and the general rule is that plaintiffs are required to make themselves available for examination in the district in which they bring suit.").

Here, Plaintiff requests that a protective order be entered that (1) relieves her of the obligation to attend her deposition that was noticed to occur at the offices of defense counsel in Glen Allen, Virginia, (2) directs that any deposition of Plaintiff be conducted by videoconference or otherwise at a facility

4

near Plaintiff's residence in New Jersey, and (3) establishes "burden and/or costs-sharing requirements for the taking and attendance at Plaintiff's deposition as may be just and proper."

In support of her request, Plaintiff states that she has been diagnosed with Meniere's Disease, which causes dizziness, vertigo, and other symptoms such that she is unable to travel by herself to Virginia for her deposition. Doc. 29 at 5. Plaintiff also asserts that traveling to appear for a deposition would be costly and would require her to miss work. Id. at 8-9. Finally, Plaintiff states that if she is required to travel for her deposition, she will need to find a "fill-in caregiver" for her disabled mother. Id. at 9.

Defendant opposes the Motion for Protective Order and asks the Court to "require Plaintiff to appear for her deposition in person in North Carolina."

The materials submitted by the parties reveal that it took an unreasonably long time to schedule Plaintiff's deposition. Defense counsel apparently began asking for available dates in October 2023; a notice for Plaintiff's deposition was not issued until late January 2024.

It also appears from the parties' filings that both sides originally expected that Plaintiff would appear for her deposition in North Carolina. However, by mid-December 2023, and with a date for the deposition still not confirmed, Plaintiff's counsel asked if it would be equally or more convenient if Plaintiff were to travel to the offices of defense counsel in Virginia. Defense

5

counsel agreed and, from that point on, the parties appear to have understood the deposition would occur there, as reflected by the January 25, 2024 Notice.

It was only after that Notice was issued that Plaintiff's counsel advised of Plaintiff's medical issue.[2]

With respect to Plaintiff's objection to traveling outside of her home state of New Jersey, while the undersigned acknowledges Plaintiff's concerns, Plaintiff has not made a sufficient showing to justify the relief she seeks. In support of the Motion for Protective Order, Plaintiff did not provide documentation supporting her specific medical concerns. She did, in response to Defendant's Motion for IME, submit a March 12, 2024 "Letter of Medical Necessity" from Dr. Stuart Ort, of ENT and Allergy Associates, LLP, which stated that Plaintiff's "imbalance is worsened by extended car travel as well as air travel" and that it was inadvisable for her to travel to Virginia or North Carolina by car or airplane. Doc. 36-2.

The letter, though, referenced Plaintiff's "current medical condition" and did not indicate whether her condition was expected to improve.

Further, Plaintiff's own representations suggest that she is able to travel if she is accompanied. Doc. 29 at 5, 8 (stating that long distance travel is

---

[2] Although Plaintiff's reply has been stricken, that filing indicated that Plaintiff was first diagnosed with Meniere's Disease in mid-October 2023. It appears, however, that Plaintiff's counsel did not learn of her diagnosis until late January or early February 2024. Doc. 29 at 5.

untenable for Plaintiff "as a driver or unaccompanied passenger" and that she would need to "recruit and pay an additional person to drive her or accompany her on an aircraft").

As for Plaintiff's argument that requiring her to appear for a deposition in person outside of New Jersey would present an undue burden based on the cost of travel and the work she would miss, Plaintiff has not provided the Court with any estimated cost for such travel, or sufficiently explained why she should not be required to bear that cost given that she has engaged in litigation in North Carolina. See Huddleston v. Bowling Green Inn of Pensacola, 333 F.R.D. 581, 585 (N.D. Fla. 2019) ("A plaintiff generally is required to bear any reasonable burden or inconvenience that the civil action presents."); United States v. Rock Springs Vista Dev., 185 F.R.D. 603, 604 (D. Nev. 1999) (explaining that a plaintiff "has not only taken the volitional step of initiating the lawsuit or claim, he or she stands to gain a substantial monetary sum and/or other beneficial relief as a result of suing a defendant"). Similarly, Plaintiff has not provided details regarding her ability to take time off work.

Additionally, to the extent Plaintiff asserts that attending her deposition outside of New Jersey would require her to find a caregiver for her mother,[3]

---

[3] Specifically, Plaintiff explains that she and her sister are caregivers for her mother, and because her sister also works, a fill-in caregiver would have to be located and paid. Doc. 29 at 9.

Plaintiff has not submitted details regarding that alleged hardship. See Tucker v. Ohtsu Tire & Rubber Co., Ltd., 191 F.R.D. 495, 498 (D. Md. 2000) ("A conclusory assertion of burden and expense is not enough."); Williams v. Sprint/United Management Company, 2006 WL 1867471, at *3 (D.Kan. 2006) ("Absent a specific showing of hardship tied to an individual's circumstances, a general order requiring that the depositions of out-of-town plaintiffs be taken telephonically is not warranted."); Huddleston, 333 F.R.D. at 586 ("Plaintiff failed to demonstrate that her financial condition or the fact that she has an infant precludes her from traveling to the Northern District of Florida. She failed to provide any affidavits regarding her financial status, the extent of her household income and expenses, the extent of her financial assets and savings, whether she could obtain a loan to pay for the flight, and other relevant information. When the Federal Rules assign an evidentiary burden to a party, conclusory statements will not suffice to carry that burden.").

In sum, Defendant is entitled to take Plaintiff's deposition. Defendant could agree to take the deposition by remote means, as it did during the First Case, particularly given that the parties' filings indicate Plaintiff's deposition in this case is intended to bring the information regarding Plaintiff current. The question before the Court, though, is whether Plaintiff has made a sufficient showing to justify the entry of the protective order that she seeks.

8

Case 1:22-cv-00265-MR-WCM   Document 38   Filed 04/18/24   Page 8 of 13

On that point, the undersigned is not persuaded that Defendant should be required to take Plaintiff's deposition by videoconference or that its counsel should be required to travel to New Jersey to obtain Plaintiff's testimony in person.

However, having considered the information described above, the Court does find that it is appropriate for Plaintiff's deposition to be taken at the offices of defense counsel in Glen Allen, Virginia as Plaintiff's counsel previously suggested and to which defense counsel subsequently agreed, and for the parties to bear their own costs relative to that proceeding.

## IV. The Motion for IME

By the Motion for IME, Defendant seeks to compel Plaintiff to appear for a physical examination at the offices of Dr. Charles DePaolo, an orthopedic surgeon located in Asheville, North Carolina.

In response, Plaintiff argues that the Motion for IME is untimely, and that Defendant has not shown good cause for an IME.

### A. Timeliness of the Motion

Rule 26(a)(2) of the Rules of Civil Procedure provides that a party's disclosure concerning a potential expert witness "must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case...." F.R.C.P. 26(a)(2)(B). The report must contain "a complete statement of all

9

opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming" those opinions. F.R.C.P. 26(a)(2)(B)(i) & (ii).

The Pretrial Order set a deadline of January 8, 2024 for Defendant to disclose its experts. Doc. 21 at 5.

On that date, Defendant identified Dr. DePaulo as an expert witness and stated that Dr. DePaolo would "testify as to Plaintiff's medical record and the findings of his forthcoming independent medical examination of Plaintiff." Doc. 36-1 at 2.

An independent medical exam, however, had not been performed by that time; the Motion for IME was not filed until March 1, 2024.

Defendant states that it did not initially plan to seek an IME and that, during the First Case, Dr. DePaolo was designated for record review but that in this case, as many of Plaintiff's providers "still have not complied with subpoenas sent to them, not all of the medical information is available to [D]efendant, and as [Defendant] has obtained more information, it has become clear that a medical examination is critical to its case." Doc. 37 at 4-5.

The undersigned does not find this argument to be persuasive. Defendant's position essentially is that it now needs an IME because Plaintiff's medical records have not been fully produced. However, the need to gather Plaintiff's medical records has been known from the beginning of this litigation

10

(and even before).[4] Defendant has not explained why it did not act promptly to obtain any outstanding records, either from Plaintiff or from her providers directly, using motions practice if necessary. Similarly, Defendant did not seek an extension of its deadline to disclose Dr. DePaolo's opinions. That is, Defendant has not been surprised by new information about Plaintiff's condition that now justifies an IME; rather, the lack of information comes from Plaintiff's apparent failure to produce all of her medical information and Defendant's apparent failure to pursue that information in a timely manner. See Shumaker v. West, 196 F.R.D. 454, 457 (S.D. W.Va. 2000) (finding that the defendant's "belated attempt to seek a Rule 35 examination days before his expert disclosures were due fails to comply with Rule 26 of the Federal Rules of Civil Procedure. For that reason, Defendant's Motion for Rule 35 Examination must be denied.").

### B. Merits of the Motion

"Unlike other tools of discovery, physical and mental examinations require more than a showing of mere relevance." E.E.O.C. v. Maha Prabhu, Inc., No. 3:07–cv–111–RJC, 2008 WL 2559417, at *2 (W.D.N.C. June 23, 2008) (citing Schlagenhauf v. Holder, 379 U.S. 104, 118 (1964); Guilford Nat'l Bank of Greensboro v. S. Ry. Co., 297 F.2d 921, 923–24 (4th Cir.1962). In particular,

---

[4] The First Case was dismissed so that Plaintiff could continue compiling her medical records.

11

Rule 35 requires (1) a showing that the party's mental or physical condition is "in controversy," and (2) a showing by the movant of "good cause" for ordering an independent medical examination. F.R.C.P. 35.

The undersigned agrees with Defendant that Plaintiff's physical condition is "in controversy." Plaintiff alleges that, as a result of the fall, she "[s]ustained immediate and serious injury to her right arm, including a displaced oblique fracture of the humerus, tearing, swelling, contusion and damage to nearby blood vessels, muscle tissue, nerves, ligaments and other bodily structures including her right shoulder and right knee." Doc. 1-1 at ¶ 15. Plaintiff further alleges that she "suffered tremendous pain and suffering, extensive injuries requiring extensive and expensive medical care and treatment over a protracted period of time, permanent injury and partial loss of use of her right arm, shoulder and knee, scars and disfigurement…." Id. ¶16.

However, on the current record, Defendant has not made a sufficient showing of good cause for ordering an independent medical examination in this garden variety personal injury matter.

**IT IS THEREFORE ORDERED THAT:**

1. Defendant's Motion to Strike Plaintiff's Untimely Reply in Support of Motion for Protective Order (Doc. 34) is **GRANTED** and Doc. 33 is **STRICKEN**.

2. Plaintiff's Motion for Protective Order (Doc. 28) is **GRANTED IN PART AND DENIED IN PART** as follows:

   a. Plaintiff is directed to appear for her deposition at the offices of defense counsel in Glen Allen, Virginia at a reasonable time and date to be determined by defense counsel.

   b. The parties shall bear their own costs relative to that proceeding, provided however that such costs may be assessed in the usual course at a later stage of this matter if appropriate.

3. Defendant's Motion to Compel Medical Examination of the Plaintiff (Doc. 31) is **DENIED**.[5]

Signed: April 17, 2024

_W. Carleton Metcalf_
W. Carleton Metcalf
United States Magistrate Judge

---

[5] This ruling pertains only to the request for an IME. It does not address Dr. DePaolo's status as a potential expert.